-FILED-

OCT 27 2025

Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | (Two Counts) |
| Plaintiff, | ) | |
| | ) | Case No. 3:25CR91 |
| v. | ) | |
| | ) | 18 U.S.C. § 545 |
| MATTHEW J. KAWA (01), | ) | 21 U.S.C. §§ 331(d), 333(a)(2) |
| JENNIFER L. STECHKOBER (02), | ) | |
| | ) | |
| Defendants. | ) | |

**THE ACTING UNITED STATES ATTORNEY CHARGES:**

## General Allegations

1. At all times relevant to this Information, the Food and Drug Administration ("FDA") was an agency of the United States Department of Health and Human Services that regulated the manufacture and distribution of drugs shipped or received in interstate commerce through enforcement of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 301, *et seq.* ("FDCA"). The requirements of the FDCA, in part, are meant to ensure that drugs sold for human use are safe and effective, and bear labeling that contains accurate and adequate information.

2. The FDCA defined a "drug" in relevant part, as: (1) any article intended for use in the diagnosis, cure mitigation, treatment or prevention of disease in man or other animal; (2) any article (other than food) intended to

affect the structure or any function of the body; of (3) any article used as a component of either. 21 U.S.C. § 321(g). Whether an article was a drug was determined by its intended use, which was defined as "the objective intent of persons legally responsible for the labeling of drugs," and the intent is determined by "such person's expressions or may be shown by the circumstances surrounding the distribution of the article." 21 C.F.R. § 201.128. Such intent might be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. 21 C.F.R. § 201.128.

3. Some drugs were also "new drugs," defined as any drugs the composition of which were not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in their labeling. 21 U.S.C. § 321(p). A "new drug" could not be lawfully introduced or delivered for introduction into interstate commerce unless an approval of that drug had been granted by the FDA through the New Drug Application (NDA) process. 21 U.S.C. § 355(a). It was a prohibited act for any person to introduce or deliver for introduction or to cause the introduction or delivery for introduction into interstate commerce any new drug unless it had been the subject of a new drug application approved by the FDA. 21 U.S.C. §§ 331(d). Such introduction or

delivery for introduction into interstate commerce was a felony violation when done with the intent to defraud and mislead. 21 U.S.C. § 333(a)(2).

### *The Paradigm Business*

4. At all times relevant to this Information, the Defendant, **MATTHEW J. KAWA (01),** was a resident of Illinois, while the Defendant, **JENNIFER L. STECHKOBER (02)**, was a resident of Indiana.

5. From at least April 2019 through March 2024, MATTHEW J. KAWA operated a business using the names of "Paradigm Peptides" and "Paradigm RE LLC", also commonly known as "Paradigm". JENNIFER L. STECHKOBER was the sister of MATTHEW J. KAWA and an employee of Paradigm.

6. Paradigm was operated as an online business that marketed products through the website www.paradigmpeptides.com. Some of the products marketed by Paradigm on the website included articles that Paradigm referred to as peptides, Selective Androgen Receptor Modulators (also known as "SARMs"), and Human Chorionic Gonadotropin (also known as "HCG").

7. Paradigm marketed and sold its products for intended uses that rendered them drugs under the FDCA. For example, Paradigm marketed and sold a product called YK-11, which it promoted for improving blood circulation, increasing muscle mass, and improving endurance levels. As

another example, Paradigm marketed and sold a product called Ostarine, which it promoted for improving lean muscle mass, enhancing strength and endurance, preventing and reversing muscle wasting, and increasing physical function. As another example, Paradigm marketed and sold a product called BPC-157, which it promoted for improved gut health, decreased inflammation, and effective wound healing. As another example, Paradigm marketed and sold a product called Thymosin Alpha 1, which it promoted for treating Lyme disease, boosting immune health, and aiding in inflammation reduction.

8. The peptides, SARMs, and HCG products sold by Paradigm were new drugs under the FDCA, 21 U.S.C. § 321(p), that required FDA approval before they could be lawfully distributed in interstate commerce. 21 U.S.C. § 355.

9. The FDA never approved any Paradigm product. In fact, Paradigm never sought approval from the FDA for any of its products.

10. MATTHEW J. KAWA employed individuals, including his sister JENNIFER L. STECHKOBER, who assisted with the marketing and sale of Paradigm's products. MATTHEW J. KAWA had supervisory authority over his employees and was ultimately responsible for all business decisions involving Paradigm.

11. Paradigm's products were marketed, sold, and distributed to customers located throughout the United States and in other countries.

12. Paradigm operated out of an office building in Michigan City, which is in the Northern District of Indiana. The Michigan City office location was used to package, label, and ship out Paradigm products purchased by customers.

13. On March 30, 2022, the FDA issued a letter to Paradigm, warning Paradigm that it was marketing its SARMs and peptides on the www.paradigmpeptides.com website with claims for the prevention, treatment, mitigation, diagnosis, and cure of diseases, such as cancer, diabetes, cardiovascular disease, osteoporosis, lyme disease and more, that rendered these products unapproved new drugs in violation of the FDCA and FDA regulations. The letter further advised Paradigm that the FDA had previously warned against people using SARMs such as "LGD-4033," "Ostarine," "GW- 501516 Cardarine," and "MK-677 Ibutamoren," for the reason that life-threatening reactions, including liver toxicity, had occurred in people taking products containing SARMs. The letter again advised Paradigm that SARMs have the potential to increase the risk of heart attack and stroke, and that the long-term effects on the body are unknown. The letter directed Paradigm to correct its activities.

14. In response to the FDA warning letter—and on the same day, March 30, 2022—Paradigm responded to the FDA by email. The email stated that "These items are used for research only and do state such on each label and on our website in several places. We are not authorizing the use for human consumption on any level." These representations were false because the Defendants knew that Paradigm's products were being marketed and sold for human consumption.

15. Following the issuance of the FDA warning letter until March 20, 2024, Paradigm continued to operate and to market its peptides, SARMs, and HCG products to customers.

16. MATTHEW J. KAWA imported drug ingredients from China, India, and other countries to addresses in Indiana and Illinois, which were then packaged at his Michigan City location and sold as Paradigm products.

17. From at least 2020 through March 2024, MATTHEW J. KAWA regularly imported shipments of HCG from outside the United States to addresses in Indiana and Illinois. On at least 15 occasions during this time period, MATTHEW J. KAWA was notified that parcels of HCG addressed to him or his associates had been stopped at the border as containing a misbranded drug not in compliance with the FDCA.

18. The Defendants knowingly took steps to mislead and defraud the United States, including the FDA, as well as consumers, in the sale of

Paradigm products. Specifically, the Defendants acted in the following ways: (1) falsely representing Paradigm products as research chemicals and not for human consumption; (2) falsely representing that Paradigm was licensed and registered with the FDA; (3) falsely representing that Paradigm manufactured and lab-tested its own products in the United States; (4) forging Certificates of Analysis associated with Paradigm products by editing the information and watermarks on other businesses' Certificates of Analysis; (5) falsely representing the ingredients and chemical compositions of its SARMs products; and (6) falsely declaring the contents of outgoing products being shipped to customers outside of the United States as "cosmetic samples" so as to avoid scrutiny at U.S. Customs checkpoints.

19. In addition, through FDA lab testing, some of the SARM products sold by Paradigm were found to contain testosterone, a Schedule III controlled substance, which was not declared as an ingredient on the product labeling.

20. From April 2019 through March 2024, the Defendants regularly introduced and delivered for introduction into interstate commerce, and caused the introduction and delivery for introduction into interstate commerce, unapproved new drugs, including, but not limited to, the following:

| Approximate date of shipment | Product Name | Lab Result | Shipping Details |
|---|---|---|---|
| February 9, 2023 | Thymosin Alpha 1 (peptide) | Thymosin Alpha 1 | Shipped from Indiana to Illinois |
| February 9, 2023 | BPC-157 (peptide) | BPC-157 | Shipped from Indiana to Illinois |
| September 1, 2023 | YK-11 (SARM) | testosterone | Shipped from Indiana to Illinois |
| September 1, 2023 | Ostarine MK-2866 (SARM) | testosterone | Shipped from Indiana to Illinois |
| September 1, 2023 | Ibutamoren MK-677 (SARM) | testosterone | Shipped from Indiana to Illinois |

21. During the period of April 2019 through March 2024, the Defendants caused the introduction into interstate commerce of unapproved new drug products worth more than $3,000,000.

## COUNT 1
### (Introducing Unapproved New Drugs into Interstate Commerce, 21 U.S.C. §§ 331(d) and 333(a)(2))

22. The allegations in Paragraphs 1 through 21 of this Information are re-alleged and incorporated here.

23. From April 2019 through March 2024, the Defendants,

**MATTHEW J. KAWA (01) and JENNIFER L. STECHKOBER (02),**

in the Northern District of Indiana and elsewhere, with the intent to defraud and mislead, introduced and delivered for introduction, and caused the introduction and delivery for introduction, into interstate commerce, of quantities of new drugs which the FDA had not approved for distribution in the United States as required by 21 U.S.C. § 355.

All in violation of Title 21, United States Code, Sections 331(d) and 333(a)(2).

THE UNITED STATES ATTORNEY FURTHER CHARGES:

## COUNT 2
### (Importing Merchandise Contrary to Law, 18 U.S.C. § 545)

24. The allegations in paragraphs 1 through 21 of this Information are re-alleged and incorporated here.

25. On or about January 16, 2024, in the Northern District of Indiana and elsewhere, the Defendant,

**MATTHEW J. KAWA (01),**

did fraudulently and knowingly import and bring merchandise—namely, a parcel of Human Chorionic Gonadotropin (HCG)— into the United States contrary to law, in that the imported merchandise was a misbranded drug and the labeling did not bear adequate directions for use, contrary to 21 U.S.C. §§ 331(a), 352(a), and 352(f)(1).

All in violation of Title 18, United States Code, Section 545.

## FORFEITURE ALLEGATIONS

26. The allegations contained in Counts 1 and 2 of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 USC § 982(a)(2)(B), 21 U.S.C. § 334, and 28 U.S.C. § 2461.

27. Upon conviction of the offense in violation of 21 U.S.C. §§ 331(d) and 333(a)(2), set forth in Count 1 of this Information, the Defendant,

**MATTHEW J. KAWA (01)**,

shall forfeit to the United States, pursuant to 21 U.S.C. § 334 and 28 U.S.C. § 2461, any unapproved new drugs that were seized by law enforcement on or about March 20, 2024, and those shipped to various locations in the United States and other countries. The Defendant, MATTHEW J. KAWA, shall also forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. The property to be forfeited includes, but is not limited to, the following: $3,314,498.00 in United States currency.

28. Upon conviction of the offense in violation of 21 U.S.C. §§ 331(d) and 333(a)(2), set forth in Count 1 of this Information, the government will seek a money judgment in the amount of proceeds received for the Defendant's participation in the offense.

29. Upon conviction of the offense in violation of 18 U.S.C. § 545, set forth in Count 2 of this Information, the Defendant,

**MATTHEW J. KAWA (01),**

shall forfeit to the United States, pursuant to 18 USC § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

30. Upon conviction of the offense in violation of 18 U.S.C. § 545, set forth in Count 2 of this Information, the government will seek a money judgment in the amount of proceeds received for the Defendant's participation in the offense.

31. If any property, as a result of any act or omission of the Defendant, MATTHEW J. KAWA:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 USC § 982(a)(2)(B), 21 U.S.C. § 334, and 28 U.S.C. § 2461(c).

DATED: October 27, 2025

                        M. SCOTT PROCTOR
                        ACTING UNITED STATES ATTORNEY

By:   *s/Luke N. Reilander*
      Luke N. Reilander
      Assistant United States Attorney